Good morning. May it please this court. My name is Mark Volvis. I am the attorney for Mr. Johal. I'm a member of the Spokane County Bar Practice in the Eastern District of Washington. This is a petition where Mr. Johal is asking the court to at least grant him an evidentiary hearing to expand the record in this case to show conclusively that he is entitled to the relief that he claims as far as the performance of counsel. We have set forth facts in this case that support our petition. This is a man who is a Punjabi Indian who was charged under a specific statute dealing with methamphetamines that he knew or should have known that the selling of legal coal pills was going to be used by a drug dealer or a manufacturer to make these drugs. The first jury in this case, after hearing all the evidence that the government presented about his sale of three boxes and more than three boxes and then a case as bad as that is, asked the court, can we consider questions of language in this man's culture in arriving at our decision? In the second trial, there were a number of witnesses who did talk about Mr. Johal's lack of proficiency in English, and he himself testified, which is to me extremely important. So my question is, even if one or two more witnesses could have been put on and wouldn't have been regarded as cumulative entirely, what, in your view, would the difference in the outcome be? Because he did testify himself, there was evidence about his improficiency. There was evidence that he knew he was not supposed to sell more than three boxes to any one customer. His daughter told him that. He had a letter saying so. He sold, like, huge quantities on several different occasions, after hours, in the back room, and commented to at least one customer that he didn't really want to go to jail. And he realized that somebody was buying a box of red-tipped matches, so the next time somebody came in and asked for pills, he didn't even ask whether it was for this pill. He knew it was, and asked whether he wouldn't like also to buy some more matches. Now, in light of all of that evidence, how can there be prejudice? Well, I think that the question that the first jury that heard this evidence had was, can we consider language and culture? I'm talking about the second trial. I understand that. I understand that. But it's very clear in this case that it is a close question, because at least one jury had a question that they could not find the evidence in this case, with all of this evidence, beyond a reasonable doubt that he was guilty. The first trial. I understand that. The second trial was different. Okay, so we're now worried about the second. I'm not disputing the fact that his English proficiency is relevant. So I'm just asking that if he put on one or two more witnesses, what difference would that have made in the outcome, given all of the evidence that I outlined? I think it would have made a substantial difference. Because? Because of the nature and the quality of the expert. Because of the circumstances that... It's clear that he was not English proficient, from his answers, he had an interpreter, so on and so forth. So what is the critical fact that the jury would have had second thoughts about, based on all of the circumstances that Judge Reimer outlined? That he didn't know that they were going to use it to make meth, or that he knew it was wrong? So what is this expert going to persuade the jury to doubt? He knew it was wrong to sell more than three boxes. That's a Herculean jump, to knowing that somebody is going to make a chemical that he doesn't know about, as far as methamphetamines are concerned. The expert in this case that they had didn't do any testing, met with him in a restaurant the night before, four days into a federal trial, had never talked to him, had never assessed him except for some informal conversation that last minute, and then came in and was subject to cross-examination at the time of the trial. The expert in this case, Dr. Fahey, who examined Mr. Yogal, can speak to that. This is a man who has the English proficiency of a four- or five-year-old child, and we're talking about understanding... Maybe, but there was clearly objective evidence that he knew he was doing something wrong. Yes. What you're saying is this expert would have been able to establish that he didn't understand what cooking meant, or what crystal meant, or anything that would indicate to him that the end use of these illegal sales would result, or was intended to result, in manufacturing an illegal drug, because he just didn't know what that language was. Yes. That's your point? Which he testified to. I'm sorry? Which he testified to, so the jury could believe or disbelieve him. He said he didn't know what crystal meant, and so the jury had the option of believing him or not. He testified partly in English, so the jury could assess for itself whether he had any facility in English, couldn't it? That's true. He did testify, but I think in this case, when the issue really is intent and scienter, under this specific statute, knew or reasonably should have known, he had the attorney for the defendant promising a particular type of testimony, and I think it created an expectation on the part of the jury that this is what we're going to show as far as language. He didn't know. He didn't get it. And then they put... But, counsel, he does comprehend some English words, so the question isn't so much comprehending a understanding cooking or whatever. You really have to take it to another level, do you not? You have to have the witness then proceed to say that as a matter of his cultural upbringing, his life experience, when he was in this context, he had no idea about what these words referred to. Not that he couldn't speak proficient English, but that he could understand cook, but he did not know its English connotation. That really is what you're driving at. And that's what we're saying. And Dr. Leahy's report and analysis and assessment was reviewed by Dr. Greenspan. Counsel, does he need to know anything beyond the fact that he's violating the law? Well, I think so, because it has to do with the type of law we're talking about. Against the law, where it's a malum in se or a malum prohibitum thing, perhaps we can talk about that. But this was a misdemeanor. In our state, in the state of Washington, the state adopted a law that says, hey, if you sell more than three boxes, that's against the law. That's not a felony. That's a misdemeanor. He knew that in his mind. That was his cultural understanding. He was selling things. The felony that they charged him with is a significant major felony, essentially dealing with the manufacturing of methamphetamine. This is the leader of a Sikh temple in Spokane, Washington, who has a family and never been in trouble before in his life and has significant problems with that. I mean, he has, at least from what we've been able to show, a reading comprehension, a comprehension of the English language of a four- or five-year-old. He just doesn't get it. And that's the issue. Mens area, intent, is the essence of the government's charge against him, best they can. I think anything that impacts intent in this case is important. We're only asking for an evidentiary hearing. This Court has indicated many times that culture, concepts, remorse, language, may have bridged the cultural gap between the jury and the accused and, furthermore, promising the type of testimony that counsel for the defendant did at the time. And then, unfortunately, the deficiency in presenting any evidence four days in the trial really impacted and prejudiced him. I'd like to save a little bit of time. I know. Thank you, Judge. Mr. Harrington. Good morning, Your Honors. May it please the Court, my name is Joe Harrington. I'm an assistant U.S. attorney in Spokane, Washington. Your Honors, the government respectfully submits that under the totality of the circumstances, based on the objective evidence that was adduced during the trial in this matter, there would have been no difference and no prejudice resulting to the defendant if additional witnesses would have been called, as suggested by counsel. This case involved the sale of a tremendous amount of an unusual brand of pseudoephedrine, a common cold medicine, which is one of the three elements commonly used to manufacture methamphetamine. In the manufacturing process, cooks or manufacturers need iodine, they need ephedrine. I think we're familiar with meth and all of that. Speak for yourself. I use it whenever I have a cold. Could you direct your point to, because the opinion in Joe Hall talked about and said specifically that he had to have known this was not to treat a runny nose, okay? That's already in the case. That's already part of the law of the case. The question, as counsel is articulating, is did he know, yes, it wasn't for a runny nose, but does the government have to establish that he knows it's for a specific illegal use, that is, that would lead to this enhanced penalty or felony status, that is, it was used for the production of an illegal substance? That's the argument that he is zeroing in on or trying to. So what's your focus on that? I understand, Your Honor. And let me suggest that the jury determined that the defendant had this requisite mentrae in this case. And if I could, with the Court's indulgence, if I could just step back for a moment, because I think it's important to answer your question. But the third element, the third ingredient to manufacture methamphetamine is red phosphorus, and red phosphorus comes commonly from the striker plates on red-tipped matches. He knew what his customers wanted. The question is, did he know what they wanted them for? I understand, Your Honor. And the – based on the totality of the circumstances and the evidence induced at trial, the jury determined that, in fact, he did. There were several things. Well, you see, what they're asking is more evidence to show that he didn't know or didn't understand. So it's not quite an answer to say the jury found. That's – we know what the jury found. The counsel suggests that additional witnesses would have suggested that the defendant, because of his cultural background and because of his language barriers, that he simply wouldn't have known what the ultimate use for this methamphetamine was for. But as pointed out, the defendant did take the stand and did testify and did suggest to the jury that he didn't understand what the common words of cooking and crystal and other drug-related terms meant. And it was within the jury's province to believe or not believe that testimony. The facts of the investigation showed that when discussions were engaged between both an undercover agent and a confidential informant, that there was discussions about cooks and knowing what we do with our pills, and the defendant's response was initially was trying to distance himself from even the sales or understanding. But he finally admitted he did know and asked, why don't you stop understanding also and making comments about the police and other people going to jail? You can't take these statements in isolation, I would submit. You have to look at the totality of the rest of the circumstances. There was a letter referred to by counsel that when approached to purchase some methamphetamine pills, these action pills, he deferred to this letter. And the letter must have had import to the defendant because the letter was dated two years earlier, which would suggest that this letter had importance to the defendant, so important that he held onto it for two years. And that letter said from the manufacturer that referenced proliferation of clandestine methamphetamine laboratories. So that would be another factor to suggest that the defendant had the knowledge because while an argument could be made he didn't understand what the word proliferation meant or what clandestine meant, certainly he must have understood what the gist of the letter was, otherwise he wouldn't have held it for two years and he certainly wouldn't have brought it out when one of the confidential informants was asked to purchase the case quantities or multiple quantities of methamphetamine. I'm sorry, of the pseudoephedrine pills. Those facts, taken in conjunction with the remaining facts, that when the sales were conducted, either the individual bags were double bagged, first in a brown paper bag that you can't see through and then placed into a translucent plastic bag, or when the case quantities of pseudoephedrine were sold, they were placed either in empty beer boxes or alcohol-type drink boxes and then bags of either ice or bananas were placed on the boxes as the items were taken out of the store. Those facts, along with the fact that when at least one confidential informant came in and asked for pills, the defendant said, that's the brand name that we're talking about in this case. So it was the defendant who associated pills, because at the store there were numerous types of pills on the shelves, that could have been sold with Action, which was this pseudoephedrine medication. And it was that defendant also, I believe the record would show, that he also inquired about whether he wanted to purchase case quantities of matches as well. It's also important to note that the defendant had a financial interest in these transactions, that case quantities of pseudoephedrine were being sold at more than double what he had purchased them for at a wholesale level. So, Your Honor, respectfully, it's the government's position that based on the defendant's words, based on his conduct, and based on the totality of the circumstances, that had additional witnesses been called during the course of the trial, with respect to the defendant's cultural background and his language barriers, there would have been no difference in the outcome of the trial. And as a result, the government submits respectfully, this Court should uphold the district court's denial of the petitioner's motion to set aside or correct a sentence under 8 to 28 U.S.C. 2255, because the record conclusively shows the defendant suffered no prejudice as a result of this alleged trial issue.  Thank you, Your Honor. Thank you, Mr. Bogos. The record has to show conclusively there was no prejudice. The record does show there was prejudice. You promise something to a jury, the question of mens rea is involved, and you put on a witness that can't speak to that. It's essentially a comment by the counsel that he has no confidence in his case. This is a man who has the language capability in our society of a 4- or 5-year-old child. This trial, if that's the only thing that's involved, with the deficiency of counsel's performance, at least allow us the opportunity to expand the record and supplement the record on the question of ineffective assistance of counsel. Thank you. Thank you, Mr. Bogos. Counsel, the matter just argued will be submitted, and the Court will take a brief recess before continuing with the calendar.
judges: Fletcher, Rymer, Fisher